UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
PATRICIA McDONNELL and
JOHN McDONNELL,

                      Plaintiffs,

      -against-

AMC ENTERTAINMENT HOLDINGS INC.
and AMERICAN MULTI-CINEMA, INC.,

                      Defendants.
------------------------------------------------------------X

**OPINION AND ORDER**

20 Civ. 5378 (JCM)

       Trial is scheduled to begin on December 5, 2022. Before the Court is Defendants AMC Entertainment Holdings Inc. ("AMC") and American Multi-Cinema, Inc.'s ("American Multi-Cinema," and collectively, "Defendants") motion *in limine* requesting that this Court apply Connecticut law to the issue of loss allocation at the trial of this action.[1] (Docket No. 43). Plaintiffs Patricia McDonnell and John McDonnell ("Plaintiffs") opposed the motion, (Docket No. 53), and Defendants replied, (Docket No. 54). For the reasons that follow, the motion is granted.

**I. BACKGROUND**

       This personal injury and loss of consortium action arises from an accident that occurred at the AMC Danbury 16 ("AMC Danbury") movie theatre in the City of Danbury, Connecticut on September 24, 2019. (Docket Nos. 16 ¶¶ 8, 18-20; 46 ¶ 1). Plaintiff Patricia McDonnell ("Mrs. McDonnell") and her husband, John McDonnell ("Mr. McDonnell") reside in New York. (Docket No. 16 ¶ 1). Defendants own and operate AMC Danbury. (*Id.* ¶¶ 8-10; *see also* Docket No. 46 ¶ 3). Defendant AMC is a corporation organized under Delaware law, with its principal

---

[1] This action is before the Court for all purposes on the consent of the parties, pursuant to 28 U.S.C. § 636(c). (Docket No. 58).

place of business in Kansas. (Docket No. 16 ¶ 2).  American Multi-Cinema is a corporation organized under Missouri law, with its principal place of business in Kansas.[2] (Docket No 16 ¶ 3).

On the date of the incident, Mrs. McDonnell drove herself and her mother, Sharon Monahan ("Ms. Monahan"), from their homes in New York to the AMC Danbury for an early afternoon showing. (Docket Nos. 16 ¶¶ 19, 25; 44-2 at 5:2-10[3]).  As Mrs. McDonnell was finding her seat in Auditorium 13, she lost her balance and fell on one of the stairways, sustaining injuries. (Docket Nos. 16 ¶¶ 27-28; 44-2 at 6:5-7).  An AMC accident report signed by Ms. Monahan indicates that Mrs. McDonnell fell due to a "misstep[]" and mistakenly believed that the "floor & stair were flush (blended together)." (Docket No. 44-4).

Mrs. McDonnell received emergency treatment in Danbury and in Carmel, New York. (Docket No. 52 ¶ 5).  The rest of her treatment took place in New York, and her insurance carrier is located there as well. (*Id.* ¶¶ 5-6).  As represented on AMC's website, Defendants operate theatres across the United States, including several in Connecticut and New York. *See* All

---

[2] Since Defendants do not indicate where they maintain principal places of business, (Docket Nos. 19 ¶¶ 2-3; 46 ¶ 3), the Court relies on the information in Defendants' public filings to the Securities and Exchange Commission ("SEC"), of which the Court takes judicial notice. *See* Fed. R. Evid. 201; AMC Entertainment Holdings, Inc., Company Information, https://www.sec.gov/edgar/browse/?CIK=1411579&owner=exclude (last visited August 11, 2022); AMC Multi-Cinema, Inc., Company Information, https://www.sec.gov/edgar/browse/?CIK=780392 (last visited August 11, 2022); *see, e.g.*, *Powell v. Delta Airlines*, 145 F. Supp. 3d 189, 198 (E.D.N.Y. 2015) (taking judicial notice of state of incorporation and principal place of business based on SEC filings); *Royalty Network Inc. v. Dishant.com, LLC*, 638 F. Supp. 2d 410, 421 n.7 (S.D.N.Y. 2009) (taking judicial notice of company information "as documented in . . . [SEC] filings").  Without explaining how the two entities are related, Defendants allege that they were "incorrectly sued" separately, and appear to incorrectly represent that both are incorporated under Delaware law. (Docket Nos. 19 at 1; 46 ¶ 3).

[3] All page number citations to the record refer to the ECF page number unless otherwise noted.

Theatres, https://www.amctheatres.com/movie-theatres (last visited August 9, 2022);[4] (Docket No. 52 ¶ 4; *see also* Docket No. 46 ¶ 3).

Plaintiffs brought suit under diversity jurisdiction on July 13, 2020. (Docket No. 1). On November 3, 2020, Plaintiffs filed an amended complaint ("Amended Complaint"), (Docket No. 16), which Defendants answered on November 17, 2020 ("Answer"), invoking several affirmative defenses, (Docket No. 19).  Defendants' second and fourth affirmative defenses state:

> AS . . . FOR A SECOND COMPLETE AFFIRMATIVE DEFENSE
> . . .
>
> [T]he culpable conduct of the Plaintiff, PATRICIA McDONNELL brought about the alleged damages and injuries which Plaintiffs claim without any culpable conduct on the part of Defendants. . . .
>
> [I]f the Court finds after the trial of this action that any culpable conduct of Defendants contributed to the alleged damages or injuries to the Plaintiffs, then and in that event, Defendants prays [*sic*] that the amount of damages which might be recoverable be diminished in the proportion which the culpable conduct attributable to the Plaintiffs bears [*sic*] to the culpable conduct which caused the alleged damages or injuries. . . .
>
> AS . . . FOR A FOURTH COMPLETE AFFIRMATIVE DEFENSE
>
> The occurrence referred to in the Plaintiffs' Complaint and the injuries claimed were caused in whole or in part by the carelessness, contributory negligence or assumption of risk of the Plaintiffs and Defendants demand that the Plaintiffs' damages be accordingly diminished or denied.

(*Id.* at 5).  The parties jointly requested and received three discovery extensions, (Docket Nos. 21; 30; 33), and on September 3, 2021, advised that discovery was complete, (Docket No. 35).

---

[4] Because there is no dispute as to the accuracy of this information on AMC's publicly-available company website, the Court takes judicial notice of it pursuant to Federal Rule of Evidence 201. *See Williams v. PMA Cos., Inc.*, 419 F. Supp. 3d 471, 484 (N.D.N.Y. 2019).

At a case management conference on November 23, 2021, the parties reiterated that discovery was complete, and Judge Halpern set deadlines for the parties' pretrial papers pursuant to his Individual Practice Rules. Consistent with that ruling, the parties filed a joint pretrial order on December 21, 2021 ("Joint Pretrial Order"), (Docket No. 42), and Defendants filed the instant motion *in limine* on January 21, 2022, (Docket No. 43). Although Rule 6.A of Judge Halpern's Individual Practice Rules requires "[a] brief statement by each party of the claims and defenses that party has asserted that remain to be tried, . . . including citations to all statutes relied on," *see* Hon. Philip M. Halpern, Individual Practices in Civil Cases (2020), https://nysd.uscourts.gov/sites/default/files/practice_documents/PMH%20Halpern%20Halpern%20Individual%20Rules%2003.18.20.pdf, Defendants' summary of their claims and defenses in the Joint Pretrial Order is devoid of statutory citations. (Docket No. 42 at 2-3). With respect to Defendants' affirmative defenses, the Joint Pretrial Order states, "Defendants contend that the . . . defenses to be tried as to liability include . . . whether the comparative negligence of Mrs. McDonnell was a proximate cause of the accident and the percentage of any such comparative negligence." (*Id.*). The parties jointly consented to the undersigned for all purposes pursuant to 28 U.S.C. § 636(c) on April 28, 2022. (Docket No. 58).

## II.  LEGAL STANDARD

A trial court's "inherent authority to manage the course of its trials encompasses the right to rule on motions *in limine*." *Highland Capital Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 176 (S.D.N.Y. 2008) (citing *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984)). An *in limine* motion is intended "to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir.

1996) (quoting *Banque Hypothecaire Du Canton De Geneve v. Union Mines*, 652 F. Supp. 1400, 1401 (D. Md. 1987)) (internal quotations omitted).  "Like most questions about the admissibility of evidence, the decision whether to grant a motion in limine is entrusted to the discretion of the trial court." *Bey v. Iaquinto*, No. 12 Civ. 5875 (JCF), 2015 WL 5786487, at *1 (S.D.N.Y. Sept. 30, 2015).

## III.  DISCUSSION

Defendants maintain that Connecticut substantive law governs the issue of loss allocation, *i.e.*, comparative negligence—with New York law governing the rest of the action—on the grounds that Connecticut has the greatest interest in this issue under New York choice of law principles.[5] (Docket No. 43; *see also* Docket No. 45 at 1-2).  Plaintiffs respond that (1) Defendants waived their right to make this choice of law argument by failing to raise it or invoke Connecticut's comparative negligence scheme until the eve of trial, and instead, pleading New York's version of this rule in their second affirmative defense; and (2) New York law governs because that state has the greatest interest in recouping Plaintiffs' losses. (Docket No. 53 at 2-7).

### A.  Potentially Applicable Statutes

New York and Connecticut treat comparative negligence in personal injury actions differently.  New York employs a pure comparative fault scheme, under which "recovery [is] available even if [the] plaintiff [is] more culpable than other persons." *See Pascente v. Pascente*, No. 91 Civ. 8104 (SS), 1993 WL 43502, at *1 (S.D.N.Y. Feb. 16, 1993) (citing N.Y. CPLR § 1411); *see also* Vincent C. Alexander, N.Y. CPLR § 1411, Supplementary Practice Commentaries, C1411:1 ("CPLR 1411 adopts a rule of pure comparative fault, so that in theory a plaintiff who is 99% responsible for his own injuries may still recover 1% of his damages.").

---

[5] Defendants further request that the jury be instructed on Connecticut's comparative negligence regime, rather than New York's. (Docket No. 47 at 17 n.1).

Indeed, N.Y. CPLR § 1411 provides that "the culpable conduct attributable to the claimant or to the decedent, including contributory negligence or assumption of risk, shall not bar recovery, but the amount of damages otherwise recoverable shall be diminished in the proportion which the culpable conduct attributable to the claimant or decedent bears to the culpable conduct which caused the damages." N.Y. CPLR § 1411.

However, Connecticut has a modified comparative fault statute, which makes "recovery unavailable if [the] plaintiff [is] more negligent than persons against whom recovery is sought." *See Pascente*, 1993 WL 43502, at *1 (citing Conn. Gen. Stat. § 52-572h(b)).  Connecticut General Statute § 52-572h states, in relevant part, that "contributory negligence shall not bar recovery in an action by any person or the person's legal representative to recover damages resulting from personal injury, wrongful death or damage to property *if the negligence was not greater than the combined negligence of the person or persons against whom recovery is sought*." *See* Conn. Gen. Stat. Ann. § 52-572h(b) (emphasis added).  Thus, in contrast to New York law, under Connecticut law, a plaintiff who is 99% responsible for his own injuries would not be permitted to recover the remaining 1% of his damages. *See id.*; *see also Pascente*, 1993 WL 43502, at *1.

## B.  Waiver

Plaintiffs argue that Defendants waived the opportunity to assert their choice of law argument by failing to (1) invoke Connecticut's comparative fault loss allocation scheme when pleading their second affirmative defense; and (2) raise this issue until this late stage of the proceedings. (Docket No. 53 at 2).  The Court addresses each of these issues in turn.

The Federal Rules of Civil Procedure (the "Rules"), which govern the issues of waiver and pleading in this diversity action,[6] do not mandate the inclusion of a particular state's law when pleading affirmative defenses.  In fact, while Rule 8(c) requires that responsive pleadings "affirmatively state" certain enumerated affirmative defenses—including contributory negligence—subsections (b) and (d) only require that such defenses be "state[d] in short and plain terms" and in "simple, concise, and direct" language, without any particular "technical form." *See* Fed. R. Civ. P. 8(b)-(d); *see also Anunziatta v. Orkin Exterminating Co.*, No. 1:00-CV-0811, 2003 WL 26121223, at *7 (N.D.N.Y. Mar. 31, 2003), *aff'd*, 122 F. App'x 524 (2d Cir. 2004).  Moreover, Rule 8(e) requires construction of pleadings "so as to do justice." *See* Fed. R. Civ. P. 8(e).

These "'short and plain' statement requirements . . . are intended simply to give the opposing party fair notice of the claim or defense, and the grounds upon which it rests." *Anunziatta*, 2003 WL 26121223, at *7 (citing *Swierkiewicz v. Srema*, 534 U.S. 506, 512 (2002)). Such notice is "that which will enable the adverse party to answer and prepare for trial, allow the application of res judicata, and identify the nature of the case so that it may be assigned the proper form of trial." *Wynder v. McMahon*, 360 F.3d 73, 79 (2d Cir. 2004) (quoting *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995)) (internal quotations omitted).  This standard does not require a party to "set out in detail the facts upon which he bases his claim," or allege legal theories, as long as the pleading contains a factual "showing" of "entitlement to relief." *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007) (alteration in original) (quoting *Conley*

---

[6] *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *see also Jones v. Globe Int'l Inc.*, Nos. 3:94:CV01468 (AVC), 3:94:CV1511 (AVC), 3:94:CV01512 (AVC), 1995 WL 819177, at *4 (D. Conn. Sept. 26, 1995) (noting that Rule 8(c) "govern[ed] the issue of waiver" in diversity action).

*v. Gibson*, 355 U.S. 41, 47 (1957)) (internal quotations omitted);[7] *see also Wynder*, 360 F.3d at 77.  This is because it "relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *See Swierkiewicz*, 534 U.S. at 512; *see also Conley*, 355 U.S. at 47.

Under this lenient standard, Defendants' pleadings were sufficient to put Plaintiffs on notice of their comparative fault argument, even though they did not specifically invoke Connecticut's statute or expressly reference modified comparative fault. *See Anunziatta*, 2003 WL 26121223, at *7.  Plaintiffs contend that Defendants did not "plead any Special Defenses" and "specifically requested that the New York pure comparative negligence scheme be applied." (Docket No. 53 at 2).  To the contrary, Defendants' second affirmative defense argues that their liability should be reduced in proportion to the amount of Plaintiff's liability, if any—without referencing any particular statutory authority or state law, and without expressly requesting a pure or modified comparative negligence regime. (Docket No. 19 at 5); *see supra* Section I.  Moreover, Defendants' fourth affirmative defense summarily invokes the concept of modified comparative fault, requesting that "Plaintiffs' damages be . . . diminished *or denied*" due to Mrs. McDonnell's own "carelessness." (Docket No. 19 at 5) (emphasis added).  These assertions were enough to alert Plaintiffs that Defendants would aim to reduce or extinguish any liability based on Mrs. McDonnell's negligence, which is all that was necessary under Rule 8.[8] *See, e.g., Alan*

---

[7] The Second Circuit has held that "the plausibility standard of *Twombly* applies to determining the sufficiency of . . . . the pleading of an affirmative defense, but with recognition that, as the Supreme Court explained in *Iqbal*, applying the plausibility standard to any pleading is a 'context-specific' task." *GEOMC Co. v. Calmare Therapeutics Inc.*, 918 F.3d 92, 98 (2d Cir. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).  However, Plaintiffs do not contend that the affirmative defenses at issue here are insufficient under *Twombly*.

[8] The doctrines of contributory and comparative negligence differ in that contributory negligence is ordinarily a complete bar to a plaintiff's recovery, whereas comparative negligence merely reduces the amount of such recovery in proportion to the plaintiff's own negligence. *See Wong v. Marriott Hotel Servs., Inc.*, No. 05-CV-04524 (RER), 2009 WL 5538644, at *1 (E.D.N.Y. Dec. 18, 2009); *see also Etienne v. Wal-Mart Stores, Inc.*, 197 F.R.D. 217, 220 n.1 (D. Conn. 2000) (noting that Connecticut General Statute § 52-572-h "replaced traditional contributory negligence with a comparative fault scheme").  However, courts often "use[] the[se] terms . . . interchangeably," *see*

*L. Frank L. Assocs., P.C. v. OOO RM Inv.*, 17-CV-1338 (NGG) (ARL), 2021 WL 3269010, at *5 (E.D.N.Y. July 30, 2021) (holding the affirmative defense "that any damages must be reduced to account for contributory or comparative negligence by the Settling Parties or other persons" was sufficient to "me[e]t [defendant's] pleading burden" "[i]n light of the limited time available . . . to file an answer and the nature of the defense asserted").

Although Defendants did not specifically assert that Connecticut law applied, Plaintiffs offer no authority requiring Defendants to do so at the pleading stage. In the context of a statute of limitations defense—another enumerated defense under Rule 8(c)—the Second Circuit has held that "identification of the particular statute relied upon, though helpful, is not required," and in fact, the defense is "sufficiently raised for purposes of Rule 8 by its bare assertion," without reference to the particular statute of limitations claimed. *See Santos v. District Council of New York*, 619 F.2d 963, 967 (2d Cir. 1980); *see also Kulzer v. Pittsburah–Corning Corp.*, 942 F.2d 122, 125 (2d Cir. 1991), *cert. denied*, 503 U.S. 939 (1992) (finding that "boilerplate" assertion that "complaint is barred by the applicable statute of limitations" complied with Rule 8); *Anunziatta*, 2003 WL 26121224, at *7 (same). At least one court within this Circuit has applied this reasoning to the pleading of other affirmative defenses listed in Rule 8(c), such as estoppel. *See Cattaraugus Cnty. Project Head Start v. Exec. Risk Indem., Inc.*, No. 00-CV-0167E(F), 2000 WL 1737943, at *2 (W.D.N.Y. Nov. 9, 2000). The Court is thus unpersuaded that Defendants' Answer, though worded somewhat vaguely, was insufficient to preserve a modified comparative fault or choice of law argument. Rather, as with a statute of limitations defense, the parties were free to explore and litigate the statutory basis of this defense as the case progressed. *See*

---

*Smith v. Goodyear Tire & Rubber Co.*, 600 F. Supp. 1561, 1562 n.2 (D. Vt. 1985), and treat comparative negligence as one of the enumerated defenses that must be affirmatively pled under Rule 8(c), *see, e.g.*, *Munn v. Hotchkiss Sch.*, 24 F. Supp. 3d 155, 187–88 (D. Conn. 2014), *aff'd*, 724 F. App'x 25 (2d Cir. 2018); *Crown Theatres, L.P. v. Daly*, 331 F. Supp. 2d 89, 92–93 & n.1 (D. Conn. 2004).

*Swierkiewicz*, 534 U.S. at 512; *Anunziatta*, 2003 WL 26121224, at *7. Accordingly, although failure to plead one of Rule 8(c)'s enumerated defenses ordinarily triggers a waiver, that maxim is inapplicable here. *Cf. S&L Vitamins, Inc. v. Australian Gold, Inc.*, 521 F. Supp. 2d 188, 213 (E.D.N.Y. 2007); *see also Wallace v. Nat'l R.R. Passenger Corp.*, 5 F. Supp. 3d 452, 476 (S.D.N.Y. 2014) (rejecting argument that defendant was required to "include choice of law allegations in its pleadings"); *Heisler v. Toyota Motor Credit Corp.*, 884 F. Supp. 128, 132 n.4 (S.D.N.Y. 1995) (finding no waiver of choice of law argument where "defendant did not raise the issue as an affirmative defense").

Plaintiffs further argue that Defendants waived the applicability of Connecticut law because they raised the issue for the first time "after the close of discovery and completion of the parties' joint pretrial filings." (Docket No. 53 at 2). That notion is misplaced in light of this case's unique procedural history. "Waiver is the voluntary and intentional abandonment of a known right[,] which . . . should not be lightly presumed." *Ins. Co. of N. Am. v. Milberg Weiss Bershad Specthrie & Lerach*, No. 95 Civ. 3722 (LLS), 1996 WL 520902, at *6 (S.D.N.Y. Sept. 12, 1996) (quoting *Gilbert Frank Corp. v. Federal Ins. Co.*, 525 N.Y.S.2d 793, 795 (1988)) (internal quotations omitted). "A party can" certainly "waive a choice-of-law argument." *See Reed Constr. Data Inc. v. McGraw-Hill Companies Inc.*, 49 F. Supp. 3d 385, 423 (S.D.N.Y. 2014). "Courts, though, do not generally hold the choice-of-law determination to have been waived until a late stage in litigation, such as at the point of making of summary judgment motions," nor is it appropriate to do so absent a showing of prejudice. *See id.* (quoting *Wultz v. Bank of China Ltd.*, 811 F. Supp. 2d 841, 845 (S.D.N.Y. 2011), *opinion withdrawn on reconsideration on other grounds*, 865 F. Supp. 2d 425 (S.D.N.Y. 2012)) (internal quotations omitted)); *see also Rivera v. Home Depot, U.S.A., Inc.*, 16-CV-7552 (JGK)(OTW), 2021 WL

1530051, at *5 (S.D.N.Y. Apr. 19, 2021). Moreover, while "the close of discovery is [typically] the point after which additional factual issues ought not to be raised," that deadline "loses its crucial importance"—rendering a showing of prejudice more difficult—"where . . . the issue to be raised is purely legal." *See Reed Constr. Data*, 49 F. Supp. 3d at 423.

Thus, courts give considerable leeway to raise choice of law arguments requiring no further factual development towards the end of the proceedings. *See, e.g.*, *Rivera*, 2021 WL 1530051, at *5 (entertaining choice of law argument when allocating attorneys' fees); *Reed Constr. Data*, 49 F. Supp. 3d at 423–24 (permitting choice of law argument over four years after filing of complaint, and after resolution of motion to dismiss and close of fact discovery). Furthermore, though "failure to include a legal theory or defense in the pre-trial order" ordinarily "results in [a] . . . waiver," a party may alternatively preserve an argument by raising it at or in advance of the final pretrial conference. *See Katt v. City of New York*, 151 F. Supp. 2d 313, 346 (S.D.N.Y. 2001) ("Finding a waiver pursuant to Rule 16(e) is particularly appropriate where (as here) a party knew or should have known of an issue that might arise at trial, yet failed to raise the issue *either* in a pretrial order *or* at the final pretrial conference.") (emphasis in original) (quoting *Colli v. Wirth*, No. 94 Civ. 3234 (LBS), 1996 WL 442835, at *1 (S.D.N.Y. Aug. 6, 1996)) (internal quotations omitted); *see also Potthast v. Metro-N. R.R. Co.*, 400 F.3d 143, 154 (2d Cir. 2005) ("[T]he district court may bar any issue that was foreseeable but not raised in a pretrial order or conference."); Fed. R. Civ. P. 16(e).

Here, the parties have known from the beginning of this case that Mrs. McDonnell resides in New York and was injured in Connecticut, and thus, a choice of law issue could arise. In addition, Plaintiffs point to no new factual issues that would surface if Connecticut's comparative fault doctrine applied. *See Rivera*, 2021 WL 1530051, at *5. Nor can they claim

unfair surprise based on Defendants' conduct thus far in the litigation, as Defendants have never taken the position that a specific jurisdiction's law applies in any brief or representation to the Court. *See Wallace*, 5 F. Supp. 3d at 476; *cf. Tesla Wall Sys., LLC v. Related Companies, L.P.*, 17-cv-5966 (JSR), 2018 WL 4360777, at *2–3 (S.D.N.Y. Aug. 15, 2018). Although Defendants admittedly did not invoke Connecticut law or modified comparative fault in the Joint Pretrial Order, they included a comparative fault argument therein, preserving that defense, and raised the choice of law issue exactly one month later in the instant motion *in limine*. (Docket Nos. 42 at 2-3; 43). They also expressly addressed it at the previous case management conference on May 5, 2022. In addition, the final pretrial conference is not scheduled to take place until November 14, 2022. Thus, Plaintiffs have had plenty of time to prepare for the eventuality that Connecticut law will govern this narrow issue at trial, and also had the "opportunity to be heard" on why New York law should apply instead. *See Gilmore v. Gilmore*, 503 F. App'x 97, 99 (2d Cir. 2012) (summary order). As a result, Plaintiffs cannot show prejudice resulting from the timing of this argument, and Defendants sufficiently preserved it for the Court's review. *See Reed Constr. Data*, 49 F. Supp. 3d at 423; *see also Lumbermens Mut. Cas. Co. v. Flow Int'l Corp.*, 844 F. Supp. 2d 286, 300 (N.D.N.Y. 2012).

**C. Choice of Law**

Defendants assert that Connecticut's comparative fault scheme governs because (a) the accident occurred in that state; (b) the parties' contacts coalesced there; and (c) doing so would be consistent with the parties' expectations. (Docket No. 45 at 4-7). Plaintiffs respond that New York law is more appropriate because, as Mrs. McDonnell's home state and the place where she received most of her treatment, New York has a greater interest than Connecticut in Mrs. McDonnell's recovery. (Docket No. 53 at 4-6). Plaintiffs further contend that Mrs. McDonnell's

presence in Connecticut was fortuitous, so Connecticut cannot be given a controlling interest. (*Id.* at 6-7).

Because it is undisputed that the two potentially applicable laws conflict, (Docket Nos. 45 at 4; 53 at 2-3), the Court conducts a choice of law analysis. *See Fieger v. Pitney Bowes Credit Corp.*, 251 F.3d 386, 393 (2d Cir. 2001). A federal court sitting in diversity applies the choice of law rules of the state in which it sits. *See Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 496–97 (1941). Under New York choice of law rules, the court applies "the law of the jurisdiction having the greatest interest in the litigation." *Kalb, Voorhis & Co. v. American Fin. Corp.*, 8 F.3d 130, 132 (2d Cir. 1993) (quoting *Intercontinental Planning, Ltd. v. Daystrom, Inc.*, 300 N.Y.S.2d 817, 825 (1969)) (internal quotations omitted); *see also Babcock v. Jackson*, 240 N.Y.S.2d 743, 749 (1963). To make this determination, "[t]wo separate inquiries are . . . required: (1) what are the significant contacts and in which jurisdiction are they located; and, (2) whether the purpose of the law is to regulate conduct or allocate loss." *Padula v. Lilarn Properties Corp.*, 620 N.Y.S.2d 310, 311 (1994) (citing *Schultz v. Boy Scouts of Am., Inc.*, 491 N.Y.S.2d 90, 95–96 (1985)).

The comparative negligence regimes before the Court are loss-allocating because they impact the extent to which Plaintiffs can recover if the jury finds that Mrs. McDonnell was negligent. *See O'Brien v. Marriot Int'l, Inc.*, No. CV 04-3369(VVP), 2006 WL 1806567, at *2 (E.D.N.Y. June 29, 2006) (collecting cases); *see also Schultz*, 491 N.Y.S.2d at 97 ("[A]ll [loss-allocating rules] share the characteristic of being postevent remedial rules designed to allocate the burden of losses resulting from tortious conduct."). In such situations, New York courts analyze the parties' contacts based on three rules adopted by the Court of Appeals in *Neumeier v. Kuehner*, 335 N.Y.S.2d 64, 69–70 (1972). *See Wong*, 2009 WL 5538644, at *2; *Cooney v.*

*Osgood Mach., Inc.*, 81 N.Y.2d 66, 73 (1993).  The third rule is relevant here and provides that when the parties have different domiciles and the tort occurs in a third jurisdiction, "the applicable rule of decision will be that of the state where the accident occurred but not if it can be shown that displacing that normally applicable rule will advance the relevant substantive law purposes without impairing the smooth working of the multi-state system or producing great uncertainty for litigants." *See Neumeier*, 335 N.Y.S.2d at 70.  This standard reflects "the traditional preference" for applying the *lex loci delictus*, with room for exceptions. *See Wong*, 2009 WL 5538644, at *3.

Accordingly, the Court begins by assuming that Connecticut comparative negligence law applies because the parties have different domiciles[9] and the accident occurred in Connecticut. *See Wong*, 2009 WL 5538644, at *3.  The Court next considers (1) whether "displacing that normally applicable rule will advance the relevant substantive law purposes;" and (2) whether such displacement would impair "the smooth working of the multi-state system or produc[e] . . . great uncertainty for litigants." *See Neumeier*, 335 N.Y.S.2d at 70.

The Court is persuaded that no substantive law purpose would be advanced by displacing Connecticut law. *See id.*  The first prong of *Neumeier*'s test asks "whether each state's interest would be advanced (or not hindered) by application of a law other than the *lex loci delicti*." *See Gilbert v. Seton Hall Univ.*, 332 F.3d 105, 114 (2d Cir. 2003) (Sotomayor, J., dissenting); *see also Wong*, 2009 WL 5538644, at *3 ("The *lex loci delictus* should only be displaced when the substantive law purposes of all states involved are advanced.").  While neither party briefed the applicability of the law of Defendants' domiciles, *see supra* n.9, Plaintiffs argue that New York

---

[9] A "corporation's domicile for choice of law [purposes] is [the] location of corporate headquarters." *In re DES Cases*, 789 F. Supp. 552, 590 (E.D.N.Y. 1992) (citing *Schultz*, 491 N.Y.S.2d at 93).  Thus, both Defendants are domiciled in Kansas. *See supra* n.2.

law should displace Connecticut law because (1) Mrs. McDonnell's own domicile has a great interest in her recovery and Connecticut has minimal interest in that issue; (2) Defendants do substantial business in New York; and (3) Mrs. McDonnell's presence in Connecticut was fortuitous. (Docket No. 53 at 4-6).  Plaintiffs thus argue that Connecticut law is not an appropriate "tie breaker" in this situation. (*Id.* at 3-4); *cf. Cooney*, 81 N.Y.2d at 74 (holding that when the relevant states have equal interests in applying their own laws, "the situs of the tort is appropriate as a 'tie breaker' because that is the only State with which [the] parties have purposefully associated themselves in a significant way").  However, "[m]any of the factors Plaintiff[s] rel[y] on apply equally to supporting [Connecticut] . . . law." *Levy v. Marriott Int'l, Inc.*, No. 08-CV-4795 (ALC), 2011 WL 1542082, at *2 (E.D.N.Y. Apr. 21, 2011).  Indeed, Connecticut "has an interest in protecting [] corporations" doing business there just as New York wishes to "compensate[e] its residents." *See id.*  The same could be said for Defendants' domiciles (or virtually any state).[10] *See Wong*, 2009 WL 5538644, at *5.  Furthermore, although Defendants admittedly do business in New York, "this fact has absolutely nothing to do with the circumstances of the case." *See Sabbatino v. Old Navy, Inc.*, No. 648/00, 2003 WL 21448822, at *2 (Civ. Ct. Richmond Cnty. May 9, 2003).

Plaintiff is correct that courts apply the law of the plaintiff's domicile where her presence in the *situs* state was fortuitous, but that exception is inapplicable here. (Docket No. 53 at 6-7). Rather than encountering Defendants by chance, Mrs. McDonnell intentionally left her home in New York to attend a specific afternoon showing at Defendants' theatre in Connecticut.  Neither

---

[10] For this reason, the Court respectfully disagrees with Plaintiffs' reliance on *O'Connor v. U.S. Fencing Ass'n*, 260 F. Supp. 2d 545, 557 (E.D.N.Y. 2003); *Armstead v. Nat'l R.R. Passenger Corp.*, 954 F. Supp. 111, 113 (S.D.N.Y. 1997); and *Murphy v. Acme Markets, Inc.*, 650 F. Supp. 51, 54 (E.D.N.Y. 1986), all of which found the locus jurisdiction an inappropriate "tie-breaker" simply because the plaintiff's domicile was more interested in loss allocation than any other state. (Docket No. 53 at 5).

the brevity of the incident, nor the fact that the theatre was close to the New York border, (Docket No. 53 at 7), alters this analysis. *See Galeotti v. Cianbro Corp.*, No. 5:12-CV-00900 (MAD/TWD), 2013 WL 3207312, at *13 (N.D.N.Y. June 24, 2013) (noting that "brevity" of relevant event does not "give rise to it being considered 'fortuitous'"). Courts regularly reject fortuitousness arguments in similar actions triggered by the plaintiff's voluntary decision to seek out the defendant's business, or to attend a recreational activity hosted by the defendant in the *situs* state. *See, e.g.*, *Gilbert*, 332 F.3d at 111–12 (rejecting law of plaintiff's domicile with respect to charitable immunity because his injury in a rugby tournament in locus jurisdiction was not fortuitous); *Levy*, 2011 WL 1542082, at *2 (declining to apply fortuitousness exception because "Plaintiff chose to stay in a hotel in Massachusetts" where accident occurred); *Sabbatino*, 2003 WL 21448822, at *2 (applying law of the *situs* where plaintiff "purposefully availed herself of one of defendant's stores in" that state). Indeed, in a decision involving analogous facts to those here, the Second Circuit found no error in the application of the law of "the location of the injury" with respect to comparative negligence, where a New York plaintiff suffered injuries at an amusement park in Virginia, owned by a defendant in a third state. *See Gray v. Busch Ent. Corp.*, 886 F.2d 14, 15 (2d Cir. 1989). Mrs. McDonnell's purposeful entry into Connecticut to see Defendants' movie is much more similar to these cases than those applying the fortuitousness exception in light of truly unexpected circumstances, such as an explosion on an airplane flight. *Cf. Pescatore v. Pan Am. World Airways, Inc.*, 97 F.3d 1, 12–14 (2d Cir.1996). Thus, the first *Neumeier* prong militates in favor of applying Connecticut law. *See* 335 N.Y.S.2d at 70.

As to *Neumeier*'s second prong, applying Connecticut law is consistent with the parties' expectations and will not impair the multi-state system. *See id.* "Litigants, as business people,

must be able to plan their affairs with some level of certainty when engaging in interstate commerce." *Galeotti*, 2013 WL 3207312, at *15 (quoting *Mihalic ex rel. Estate of Johnson v. K-Mart of Amsterdam*, 363 F. Supp. 2d 394, 401 (N.D.N.Y. 2005)) (internal quotations omitted). Here, Mrs. McDonnell's accident occurred at a Connecticut venue owned and operated by Kansas domiciliaries incorporated in Delaware and Missouri.  Because Mrs. McDonnell availed herself of the interstate system to attend an out-of-state movie owned by a national corporation, it was entirely foreseeable that she would be subject to that state's laws with respect to an incident at her destination.  It was similarly reasonable for Defendants to expect their Connecticut location to be subject to Connecticut law regarding accidents occurring there.  Indeed, Connecticut law is the most logical standard because Connecticut "is the state where the[] [parties'] 'relevant contacts' with each other arose." *See Mejia v. O'Neill Grp.-Dutton, LLC*, No. 18CV6483 (LMS), 2019 WL 3491481, at *12 (S.D.N.Y. Aug. 1, 2019) (noting that "it would promote significant uncertainty if the extent of Defendants' liability depended on the state of domicile of whoever is harmed as a result of conduct that occurred exclusively in [the *situs* jurisdiction]") (quoting *Gilbert*, 332 F.3d at 111); *see also Wong*, 2009 WL 5538644, at *5 ("[T]here is no reason why Defendant, a domiciliary of Maryland, would expect the laws of New York to apply to an accident that occurred in Hawaii.").

   Furthermore, whereas applying Connecticut law as a "tie-breaker" with respect to loss allocation will reinforce this Court's neutrality when presiding over nondomiciliaries, the application of New York law may "create the appearance of favoritism toward the local litigant." *See Wong*, 2009 WL 5538644, at *5 (quoting *Aboud v. Budget Rent A Car Corp.*, 29 F. Supp. 2d 178, 183 (S.D.N.Y. 1998)) (internal quotations omitted).  This, in turn, would encourage forum shopping, which is disfavored and upsets the smooth operation of the multi-state system. *See id.*;

*see also Schultz*, 491 N.Y.S. at 98.  The Court wishes to avoid the appearance of local bias.  Therefore, it is appropriate to apply Connecticut law to the narrow issue of loss allocation, to give credence to the interests of all states involved, and to promote interstate harmony.  Accordingly, the Court finds that New York choice of law rules dictate the application of Connecticut law with respect to comparative negligence at trial.

## IV.  CONCLUSION

For the foregoing reasons, Defendants' motion *in limine* is granted, and the Clerk is respectfully requested to terminate the pending motion (Docket No. 43).  The parties are directed to submit proposed jury instructions regarding comparative negligence under Connecticut law by September 16, 2022.

Dated:   August 11, 2022
         White Plains, New York

                                                     **SO ORDERED:**

                                                     */s/ Judith C. McCarthy*
                                                   JUDITH C. McCARTHY
                                                   United States Magistrate Judge